# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SABRINA TICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-18-974-R |
| | ) | |
| BOARD OF COUNTY | ) | |
| COMMISSIONERS OF LINCOLN | ) | |
| COUNTY and SHERIFF CHARLIE | ) | |
| DOUGHERTY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the Motion for Summary Judgment (Doc. No. 39) filed by Defendant Sheriff Charlie Dougherty. Plaintiff filed a Response in opposition to the motion and Defendant Dougherty filed a Reply in support of his position. (Doc. Nos. 46 and 48). Upon consideration of the parties' submissions, the Court finds as follows.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). In assessing whether summary judgment is appropriate, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

Plaintiff filed this action alleging violation of her right to association under the First Amendment because she was terminated from her position as investigator for the Lincoln County Sheriff's Department the day after Defendant Dougherty, the incumbent, defeated her husband, John Tice, in the 2016 election.[1] The circumstances surrounding Plaintiff's first four years at the Department are not disputed; the facts related to her termination and the events leading thereto, however, are contested by the parties.[2]

Consistent with the above, the parties agree that Defendant Dougherty was elected sheriff of Lincoln County in 2010 via special election. After Plaintiff had served for a period as a reserve deputy, in 2012 Defendant hired her as a full-time deputy. Her husband, John Tice, already served in that capacity. In 2015, Sheriff Dougherty was informed by the Oklahoma State Bureau of Investigation ("OSBI") of an ongoing investigation into the alleged excessive use of force by John Tice. As a result of this information, Sheriff Dougherty placed Deputy John Tice on paid administrative leave. In August 2015, the OSBI indicated that John Tice was to be indicted, which resulted in his termination by Defendant Dougherty. Defendant contends that, following John Tice's termination,

---

[1] Defendant seeks summary judgment to the extent Plaintiff is attempting to assert a free speech claim, an argument not addressed by Plaintiff in her response to the Motion for Summary Judgment. *See e.g. Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (noting that there are two separate tests for First Amendment retaliation for speech and political affiliation). Plaintiff similarly did not respond to Defendant's familial association claim. The Court therefore concludes that Plaintiff did not intend to pursue such claims or that she has waived them.

[2] Defendant contends the Court should not consider Plaintiff's self-serving affidavits. The self-serving nature of sworn testimony is not a proper basis for disregarding it on summary judgment. Although the Court "will disregard a contrary affidavit ... when it constitutes an attempt to create a sham fact issue," *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1282 (10th Cir. 2003)(internal quotation marks omitted), "[s]o long as an affidavit is based upon personal knowledge and set[s] forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature." *Sanchez v. Vilsack*, 695 F.3d 1174, 1180 (10th Cir. 2012) (internal citation and quotation marks omitted). *See Greer v. City of Wichita, Kansas*, 943 F.3d 1320, 1325 (10th Cir. 2019).

Plaintiff yelled and cussed at him because she disagreed with his termination decision.[3]

In September 2015, Plaintiff filed a complaint regarding derogatory comments made to her by Captain Jack Jackson that were also critical of her husband. (Doc. No. 42-4). Later that day Plaintiff surreptitiously recorded conversations with Jackson.[4] Although Plaintiff's direct supervisor, Larry Stover, was aware of this behavior, there is no evidence in the record that Defendant took any steps toward disciplining Plaintiff despite her surreptitious recording of conversations with other officers starting sometime after August 2015. Defendant does not cite to the alleged recordings as a basis for his termination decision, nor was Plaintiff disciplined for recording the conversations.

In April 2016, the charges against him having been dismissed, John Tice declared his candidacy for Sheriff in the upcoming election. Plaintiff concedes that Sheriff Dougherty treated her well during the election, but contends the Undersheriff, Tim Donaldson, acted hostilely toward her on more than one occasion because of her husband's candidacy and her support thereof.[5] The day after the election Sheriff Dougherty informed Plaintiff that she was terminated.

---

[3] Larry Stover, Plaintiff's supervisor, indicates that he overheard Plaintiff and recommended at that time that the Sheriff terminate her employment. In his deposition, the Sheriff did not rely on Plaintiff's 2015 outburst as a basis for his termination decision in November 2016. In his affidavit, the Sheriff indicated that Plaintiff had yelled at him but did not tie the incident to her termination. There was apparently no discipline imposed as a result of the alleged incident. Plaintiff testified that she discussed the investigation with the Sheriff and that she was emotional and sad about the situation.

[4] Plaintiff also recorded a conversation with Undersheriff Tim Donaldson of an unknown date although presumably in 2015, during which time she was counseled about failing to follow the chain of command in complaining about Mr. Jackson's comments. She apparently also recorded, without the Sheriff's knowledge, the conversation where he terminated her employment.

[5] On one occasion after Plaintiff rode in a parade in support of John Tice she received a text message from Undersheriff Donaldson that included a picture of her from the parade captioned "No loyalty, shameful & embarrassing, guess you didn't abstain from campaigning after all." Doc. No. 46-2.

3

Defendant Dougherty made the termination decision, although he testified that he had received oral recommendations to that effect from Captain Stover and Undersheriff Donaldson. Defendant testified that Captain Stover said, "[j]ust that she was causing problems and degrading the agency and talking bad about me and that none of us knew what we were doing." (Dougherty Deposition, p. 26). "He probably just brought to my attention that, you know, they are trying to work investigations and what-have-you and she's upset because I fired John, and we don't see eye to eye on that, and so she - - he was just having problems with getting her to be focused and move forward." (*Id.* at pp. 27-28).[6]

The Sheriff believes Captain Stover came to his office three times in the two months prior to Plaintiff's termination, but the Sheriff did not terminate her then because it would look bad due to the election. *Id.* Donaldson's oral recommendation allegedly came thirty days prior to Plaintiff's termination. (*Id.* at p. 28). When asked for specific information regarding Donaldson's recommendation, he testified about a 2015 incident involving Plaintiff and Jack Jackson, who made derogatory comments about Plaintiff and her husband, the conversations that Plaintiff taped. "And so Tim had recognized some things - or there was one incident where her and Capt. Jackson had got into a word argument, and so Tim intervened on that deal and disciplined Jack, the captain." (*Id.* at p. 29).

Sheriff Dougherty testified about his decision, stating that everyone in the small office needed to be able to work together and that Plaintiff's negativity made that

---

[6] When asked if he could think of any other comments made by Stover, Sheriff Dougherty testified that he could not. (Dougherty Deposition, p. 27).

impossible because she was talking badly about the Sheriff and his office.[7] Plaintiff denies making negative comments about the Sheriff or the Sheriff's Department, but concedes that shortly after her husband's arrest, she might have made negative comments about the Lincoln County District Attorney's Office, because she disagreed with their decision. Regardless, between the summer of 2015 and November 2016, when Defendant terminated Plaintiff, there is no indication of any disciplinary action imposed on Sabrina Tice as a result of her alleged negative public comments prior to her termination.

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (citation omitted). To avoid summary judgment, Plaintiff must establish that a genuine issue of material fact exists that provides evidence that her political affiliation or beliefs were the "substantial" or "motivating" factor behind her termination and that her position did not require political allegiance.[8] *Id.* at 1185. If Plaintiff presents evidence that her affiliation was a substantial or motivating favor in her termination, Defendant may avoid liability by establishing by a preponderance of the evidence that he would have reached the same decision as to Plaintiff's employment even in the absence of her protected conduct. *Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016).

---

[7] The Department had a policy that provided, "Deputy shall refrain from gossip, spreading rumors or discussing Lincoln County Sheriff's Office with any person that does not have a need to know." (Dougherty Deposition, p. 49).

[8] The employer bears the burden of proving that a position required political allegiance. *Snyder*, 354 F.3d at 1185. Here "Defendant takes no position on whether Plaintiff's position as a deputy sheriff required political allegiance." (Doc. No. 39, ECF p. 20).

Defendant is not entitled to summary judgment on Plaintiff's claim that he interfered with her right of association under the First Amendment by terminating her employment after she supported the opposition candidate, her husband John Tice, in the 2016 sheriff's election. Defendant Dougherty terminated Plaintiff Tice one day after the election and he was aware of her activities in support of her husband's candidacy in opposition to his reelection.

> Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive. *See Baca,* 398 F.3d at 1221. . . . [T]emporal proximity is insufficient, without more, to establish such speech as a substantial motivating factor in an adverse employment decision. *Id; see also Morfin v. City of East Chicago,* 349 F.3d 989, 1005 (7th Cir.2003) (explaining protected conduct cannot be a basis for retaliation where defendants did not know of such conduct). An employer's knowledge of the protected speech, together with *close* temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment. *See Ramirez,* 41 F.3d at 596. Other evidence of causation may include evidence the employer expressed opposition to the employee's speech, *see Alpha Energy Savers, Inc. v. Hansen,* 381 F.3d 917, 929 (9th Cir.2004), or evidence the speech implicated the employer in serious misconduct or wrongdoing. *See Baca,* 398 F.3d at 1221. On the other hand, evidence such as a long delay between the employee's speech and challenged conduct, *see McGuire v. City of Springfield,* 280 F.3d 794, 796 (7th Cir.2002), or evidence of intervening events, *see Gubitosi v. Kapica,* 154 F.3d 30, 33 (2d Cir.1998), tend to undermine any inference of retaliatory motive and weaken the causal link.

*Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). Defendant Dougherty indicates that he made the decision to terminate Plaintiff following the recommendations of Larry Stover, Plaintiff's immediate supervisor, and undersheriff Tim Donaldson. The record indicates that Undersheriff Donaldson harassed Plaintiff about her support of John Tice

during the election, for which he was disciplined, but nevertheless his opinion on Plaintiff's employment status was considered by the Sheriff.[9]

As noted, Defendant could avoid liability by establishing by a preponderance of the evidence that he would have terminated Plaintiff regardless of her association with the opposition in the election. To be certain, Defendant has presented evidence that would support terminating Plaintiff, although ironically nothing was apparently said to Plaintiff during the eighteen-month period, nor was she subjected to any discipline for her alleged behavior. Defendant's evidence is not undisputed, certain of the evidence may be hearsay, and a jury is the proper body for assessing the credibility of the witnesses. Upon consideration of the evidence presented in the light most favorable to the Plaintiff, the Court cannot say that "any reasonable jury" would find that Defendant would have taken the adverse action even in the absence of Plaintiff's support of her spouse in the election. *See Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2008).

Defendant Dougherty in his individual capacity also seeks summary judgment on the basis that he is entitled to qualified immunity. Under § 1983, state officials sued in their individual capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Qualified immunity shields government officials from liability where "their conduct does not violate clearly

---

[9] Donaldson was disciplined in part for placing a flyer allegedly created by the Committee and Constituency of Charlie Dougherty for Sheriff on Ms. Tice's desk on November 2, 2016. The flyer included a side-by-side list of the purported traits of both candidates, each of the characteristics subscribed to Sheriff Dougherty were positive and those attributed to John Tice were negative, such as "Can't recognize when he's wrong" and "Disgusted with the Community." (Doc. No. 46-3). Plaintiff's office was locked, but Donaldson gained access and left the flyer for her. Sheriff Dougherty testified that Donaldson's recommendation pre-dated his discipline and any complaints by Plaintiff.

7

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity also shields [officials] who have 'reasonable, but mistaken beliefs,' and operates to protect [officials] from the sometimes 'hazy border[s]' of the law." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1251 (D.N.M. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Once a defendant asserts qualified immunity, the Plaintiff bears the burden of demonstrating that both (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017). A plaintiff's failure to establish either of the two requirements is fatal to a claim. *Pearson*, 555 U.S. at 236. As set forth above, Plaintiff has presented sufficient evidence to establish that genuine issues of material fact exist with regard to her First Amendment association retaliation claim. Furthermore, this right was clearly established in November 2016, when Ms. Tice's employment was terminated. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999) (Sheriff not entitled to qualified immunity because he should have known it would be unconstitutional to terminate employees for affiliating with or supporting a particular candidate for sheriff). Accordingly, Defendant is not entitled to summary judgment on the basis of qualified immunity.

Finally, Sheriff Dougherty asserts that Plaintiff cannot prevail on an official capacity claim. An official capacity claim is essentially a claim against the governmental entity employing the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There are

five potential sources for a municipal policy or custom, only one of which is implicated herein, the decision of an employee with final policymaking authority. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

> "Cities cannot incur liability under § 1983 on a *respondeat superior* theory, but can be liable if a final policymaker takes unconstitutional action.... Whether an individual is a final policymaker for purposes of § 1983 liability is a legal issue to be determined by the court based on state and local law." *Vogt v. City of Hays,* 844 F.3d 1235, 1251 (10th Cir.), *cert. granted sub nom. City of Hays v. Vogt,* ––– U.S. ––––, 138 S.Ct. 55, 198 L.Ed.2d 781 (2017) (internal citation and quotation marks omitted).
>
> Defendants do not dispute that under Colorado law, Sheriff Wegener had final policymaking authority for the Sheriff's Office discipline, demotion, and termination of deputies. Nor do they dispute that Sheriff Wegener personally executed the demotion of Plaintiff Tonjes and made the alleged statement to the news reporter. Defendants rely on inapposite cases, in which the plaintiff did not sue a municipal entity for the decision of its final policymaker, but rather attempted to argue a county board was responsible for the decisions of the sheriff, a city council was responsible for a police chief's actions, or a sheriff's office was responsible for an officer's actions by deliberate indifference in training or supervision. *See, e.g., Isenbart v. Bd. of Cty. Comm'rs*, No. 11–cv–03240–LTB–BNB, 2012 WL 4378269, *7 (D. Colo. 2012); *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). *Brown* expressly distinguishes such cases from § 1983 claims that allege a personal, direct action of the final policymaker. But C.R.S. § 30–10–506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies, and if the sheriff acted unconstitutionally in those duties, the Sheriff's Office can be held liable for his actions.

*Tonjes v. Park Cty. Sheriff's Office*, 300 F. Supp. 3d 1308, 1332 (D. Colo. 2018). In *Starett v. Wadley*, 876 F.2d 808 (10th Cir. 1989), plaintiff sued the County and the County Assessor, for whom plaintiff worked, alleging the violation of her rights under the First and Fourteenth Amendments, specifically that she was subjected to sexual harassment and terminated following her complaints. The court found the evidence sufficient to support

9

liability against the County for the former employee's First Amendment claim, because the County assessor who terminated her was the final decisionmaker for purposes of hiring and firing. "We hold that Wadley's termination of plaintiff's employment was a final policy decision for the County. . . . Because the County had delegated to Wadley the power to establish final policy concerning hiring and firing personnel within his department, the County is liable for Wadley's conduct in that regard." *Id.* at 819 (footnote omitted).

> Whether an individualized decision is a government policy depends on the authority of the decision-maker. If the decision-maker has final policymaking authority for the government entity, all decisions made within the scope of that authority are government policies under § 1983. *Simmons*, 506 F.3d at 1285-86. This is so because "[a]n act by a [local government entity's] final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom ... whether that action is to be taken only once or to be taken repeatedly." *Id.* at 1285.

*Hicks v. City & Cty. of Denver*, No. 17-CV-03001-MSK-KLM, 2019 WL 4306196, at *7 (D. Colo. Sept. 11, 2019). There is no dispute that Defendant Dougherty is the final policymaker with regard to employment at the Lincoln County Sheriff's Office and accordingly, his actions provide the basis for liability against Lincoln County via an official capacity lawsuit.

The Court finds that there are genuine issues of material fact that remain for resolution at trial on Plaintiff's individual capacity and official capacity claims against Defendant Dougherty. Therefore, summary judgment is inappropriate on Plaintiff's First Amendment association claim.

**IT IS SO ORDERED** this 2nd day of April 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE